**STATE OF WEST VIRGINIA**

*In re* **E.R. and C.R.-1**

**No. 20-0561** (Morgan County 19-JA-18 and 19-JA-20)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.R.-2, by counsel Patrick Kratovil, appeals the Circuit Court of Morgan County's June 8, 2020, order terminating his parental rights to E.R. and C.R.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joanna L-S Robinson, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his improvement period and his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition against petitioner based upon allegations of drug abuse. Specifically, the mother gave birth to a child not at issue on appeal, and both the mother and the child tested positive for oxycodone at the birth. During the investigation of the matter, a Child Protective Services ("CPS") worker interviewed a family friend who reported that petitioner frequently abused drugs, including marijuana and "pills." The family friend told the CPS worker that she had observed petitioner under the influence and once saw a bag of marijuana fall out of his pants pocket. The family friend further indicated that petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as C.R.-1 and C.R.-2, respectively, throughout this memorandum decision.

and the mother sought out pills as recently as after the mother's discharge from the hospital after giving birth and while the baby was still there.

The CPS worker also spoke to then-four-year-old E.R., who reported instances of domestic violence and that petitioner "love[d] taking pain pills and [he] take[s] them so many times." E.R. further reported that petitioner takes pain pills by putting them in his mouth and that petitioner "snorts" them. When asked what "snorts" means, E.R. drew a line in the dirt. When interviewed, petitioner denied engaging in domestic violence and abusing pain pills and claimed that E.R. "makes stuff up." Petitioner did admit to smoking marijuana and stated he spent approximately $100 a month on the substance. The DHHR alleged that petitioner's substance abuse adversely affected his ability to parent and negatively impacted the children.

Petitioner waived his preliminary hearing. Following the preliminary hearing, petitioner tested positive for marijuana, cocaine, and alcohol.

The circuit court held an adjudicatory hearing in October of 2019 wherein petitioner stipulated to the allegations contained in the petition. Petitioner specifically stipulated that his drug abuse negatively affected his ability to parent the children. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent. Petitioner requested a post-adjudicatory improvement period, and the circuit court scheduled a hearing on the motion to provide the opportunity for a multidisciplinary team ("MDT") meeting to be held. Drug screening services were put in place.

The circuit court convened the hearing on petitioner's motion for an improvement period in November of 2019 but continued it due to petitioner's absence at the scheduled MDT meeting. The circuit court reconvened the hearing in December of 2020, at which time petitioner expressed concerns over his ability to comply with the terms and conditions of the improvement period as his driver's license was suspended. The circuit court continued the hearing for thirty days to allow petitioner time to get his license reinstated.

In January of 2020, the circuit court reconvened, for a final time, the hearing on petitioner's motion for an improvement period. The circuit court was advised that petitioner tested positive for amphetamines but failed to provide a prescription. The circuit court was also advised that petitioner failed to have his driver's license reinstated and submit to drug screens at a court-approved location. Nevertheless, the circuit court granted petitioner a post-adjudicatory improvement period upon his testimony that he agreed to the terms of the improvement period and would comply with services.

At a review hearing held in March of 2020, the DHHR informed the circuit court that it planned to file a motion to terminate petitioner's improvement period. The DHHR proffered that petitioner was dishonest with the MDT, had not obtained his driver's license, was terminated from his place of employment, and failed to submit to drug screens. Petitioner testified that he submitted to one or two drug screens. He stated that he had been unable to comply with certain services because he had recently gone to Morgantown, West Virginia, to care for his grandmother; however, petitioner was unable to provide his grandmother's address. Petitioner also stated that he contacted his caseworker to request his services be transferred to the Morgantown area, but he

failed to provide proof of those communications. Petitioner also claimed that he "took a couple [domestic violence] classes" but admitted that "there was no record of that as well." He further admitted that he was charged with driving on a suspended license, third offense, in Virginia. The circuit court instructed petitioner to ask the DHHR for assistance with transportation in advance and not the day of any scheduled services. The circuit court continued the matter to allow petitioner more time to comply with services.[2] By order entered on March 22, 2020, this Court declared a judicial emergency due to the COVID-19 pandemic.

The circuit court held a dispositional hearing in May of 2020. The caseworker testified that petitioner failed to comply with services and failed to provide his address. The caseworker testified that she obtained verification that petitioner took one domestic violence class but no Narcotics Anonymous ("NA") classes. Additionally, petitioner failed to provide his grandmother's address, the home at which he was allegedly residing. When the caseworker contacted the grandmother, she informed the caseworker that she had not seen petitioner since 2015. The caseworker also testified that petitioner lied about his means of transportations and provided fictitious names and phone numbers for people allegedly giving him rides to services.

Petitioner testified and admitted that he lied about his transportation situation and the names and phone numbers of fictitious friends who were allegedly driving him to services and MDT meetings. Petitioner also admitted that the classes "have been a disaster" and he "ha[d] been to . . .[only] two of the [domestic violence] classes" due to "work and whatnot." Petitioner also testified that he had difficulty logging in to online domestic violence classes. Petitioner stated that he attended only two parenting and adult life skills classes and claimed that he attended NA meetings but failed to provide documentation of his attendance. Nevertheless, petitioner believed he completed his improvement period and stated that any failure to attend services was "part everybody's fault for the lack of communication and all that. It ain't just me."

Following the close of evidence, the circuit court found that it had repeatedly continued hearings on petitioner's motion for an improvement period to permit him additional time to find transportation and determine whether he would be able to comply with an improvement period. The circuit court found that it had "bent over backwards starting improvement periods until [p]etitioner had the opportunity to put things in place." The circuit court observed that petitioner had attended only two domestic violence courses since January of 2020 and only two parenting and adult life skills classes since February of 2020. While petitioner claimed that he attended NA meetings, the circuit court found that he failed to provide a log of his attendance. The circuit court noted that petitioner also failed to submit to random drug screens and only screened after court hearings. The circuit court found that petitioner tested positive for amphetamines in March of 2020 and failed to provide a valid prescription. Further, the circuit court determined that petitioner lied about who was transporting him to and from drug screens, provided false phone numbers, lied about his living arrangements with his grandmother, and failed to provide a valid address. Although the circuit court was initially concerned that the COVID-19 pandemic could result in petitioner having difficulty in complying with the terms of his improvement period, the pandemic

---

[2]It was noted that the DHHR could not provide transportation assistance to drug screens but could help with transportation to other scheduled services such as supervised visitation.

actually resulted in most services moving to an online or remote platform, with the exception of drug screens, making these services more accessible to petitioner in light of his transportation issues. Based on these circumstances, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the June 8, 2020, dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating his post-adjudicatory improvement period. Petitioner claims that poverty impacted all areas of his life, including his ability to parent his children and comply with the terms and conditions of his improvement period. Petitioner contends that he was unable to obtain his driver's license, that the DHHR denied him assistance with transportation, and that he had trouble attending services. Petitioner also claims that, after a state of emergency was declared due to the COVID-19 pandemic, services were shut down and unavailable to him. He states that he "was doomed due to his endemic poverty, lack of technological sophistication, and now the absence of services to assist him." He argues that he attempted to comply with services but that he repeatedly had issues with the online platforms used to hold virtual services. He further argues that he attempted to maintain employment, regularly communicated with his caseworker, attended a few supervised visits despite his transportation issues, and drug screened on a few occasions. Petitioner also points out that he admitted his dishonesty to the MDT at the dispositional hearing. Petitioner acknowledges that he became frustrated by the improvement period, which led to some disengagement, but contends that he complied substantially enough that his improvement period should not have been terminated, especially given the difficulties that arose due to the COVID-19 pandemic. He asserts, "At the end of the day, any failure to comply with the terms [of the improvement period] could be attributed to his financial situation, which he was doing his best to remedy, or to the pandemic and resulting loss of services, over which he had no control."

---

[3]The mother's parental rights were terminated below. The permanency plan for the children is adoption by their foster parents.

Pursuant to West Virginia Code § 49-4-610(7), "[u]pon the motion by any party, the court shall terminate any improvement period granted pursuant to this section when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." Additionally, this Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Here, the record overwhelmingly supports the circuit court's findings related to petitioner's failure to fully participate in his improvement period and his ultimate failure to successfully complete the same. While petitioner blames his lack of participation on transportation, the record reveals that the circuit court continued the matter for several months to allow petitioner time to arrange for transportation. The circuit court repeatedly asked petitioner whether he was able to comply with the terms and conditions of his improvement period and instructed him to obtain his driver's license. Finally, in January of 2020, petitioner assured the circuit court that he would be able to comply with his improvement period. However, petitioner failed to obtain his driver's license and failed to obtain any sort of reliable transportation to services. Petitioner lied to the DHHR about his transportation and did not clearly ask for assistance with transportation to services.[4] Petitioner fails to cite to a single instance in the record demonstrating that he alerted the circuit court that his financial situation prevented him from complying with services. Moreover, although petitioner blames his failure to adequately participate in services on others, West Virginia Code § 49-4-610(4)(A) provides that parents "shall be responsible for the initiation and completion of all terms of the improvement period." Interestingly, petitioner claims he was not able to attend services due to a lack of transportation, but he testified on numerous occasions that he traveled between Morgantown, West Virginia; Grantsville, West Virginia; Winchester, Virginia; and Luray, Virginia, for various personal dalliances. Accordingly, we find this aspect of petitioner's argument to be without merit.

To the extent that petitioner claims that the COVID-19 pandemic prevented him from participating in services, we find no merit to this position. Random drug screens were put into place sometime in the fall of 2019, and petitioner was granted a formal improvement period in January of 2020. Prior to the declaration of a state of emergency, at a review hearing held in March of 2020, the DHHR indicated its intention to file a motion to terminate petitioner's improvement period due to his lack of compliance. Petitioner had not consistently submitted to drug screens, had not consistently attended domestic violence classes, and failed to provide evidence of his

---

[4]Again, as noted above, the DHHR did inform petitioner that it was not available to transport petitioner to drug screens. However, there was never any indication that transportation to other services was not available.

attendance at NA meetings. Accordingly, even before the cessation of in-person services due to the pandemic, petitioner was not complying with his improvement period. Further, after many services moved online, petitioner failed to comply despite no longer needing reliable transportation. Petitioner also fails to demonstrate that he communicated his claimed technology issues to the DHHR. Under these limited circumstances, we find that the COVID-19 pandemic is merely a convenient excuse for, and not the root cause of, petitioner's failure to comply with services. As such, the circuit court did not err in terminating his improvement period.

Petitioner next argues that the circuit court erred in terminating his parental rights. Petitioner reiterates his arguments regarding lack of transportation and the COVID-19 pandemic. Petitioner further criticizes the circuit court for ignoring his claims that he had difficulty finding online versions of NA meetings and telling him to "get a job" at the March of 2020 review hearing. Petitioner claims that nearly fifty million people lost their jobs due to the pandemic and that he himself contracted the virus. Petitioner contends that he was in the process of correcting the major issues necessary to improve his parenting skills and simply did not have a real opportunity to correct these issues due to the pandemic.

The evidence as set forth above also supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner failed to participate in services and, therefore, failed to remedy the issues of abuse and neglect—drug abuse and domestic violence. Petitioner failed to submit to nearly all required drug screens, and on the few occasions he did submit, he tested positive for amphetamines and failed to provide any valid prescription. Petitioner did not seek out drug treatment, failed to comply with parenting and adult life skills classes and domestic violence classes, failed to provide verification of his attendance at NA meetings, and repeatedly lied to the MDT. These failures occurred before the State felt the impact of the COVID-19 pandemic, and petitioner failed to comply with services even after transportation issues were no longer a barrier to his compliance. Petitioner failed to demonstrate that he alerted the DHHR to his technological issues or that he was having issues finding online services. Moreover, petitioner failed to accept responsibility for his actions and blamed others for his lack of compliance, claiming "it ain't just me."

6

Under the circumstances of this case, we find no merit in petitioner's claim that the pandemic negatively impacted his compliance with services. Petitioner failed to adequately remedy the conditions of abuse and neglect, and we find that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison